## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | | |
|---|---|---|
| **JERBEREE JEFFERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.: 3:15-CV-78-TCB-** |
| | ) | **RGV** |
| **SEWON AMERICA, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT SEWON'S MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT MOTION

Defendant Sewon America, Inc. ("Sewon" or "Defendant") submits this Memorandum in Support of its Motion for Summary Judgment filed simultaneously herewith and respectfully requesting the dismissal with prejudice, of all claims asserted by Plaintiff Jerbree Jefferson ("Jefferson" or "Plaintiff").

## I. INTRODUCTION

Plaintiff, a former employee of Sewon, filed her Complaint on May 6, 2015, alleging Sewon violated 42 U.S.C § 2000e et seq. and 42 U.S.C. § 1981 by discriminating against her based on race, ethnicity and national origin, as well as unlawfully retaliating against her. The undisputed facts and Jefferson's sworn admissions establish these claims are subject to dismissal because (1) Jefferson cannot establish a *prima facie* case of discrimination; (2) she cannot establish a

*prima facie* case of retaliation; and (3) even assuming she could establish a *prima facie* case of discrimination or retaliation, the undisputed facts and sworn admissions show Sewon's actions and decisions were based on legitimate, non-discriminatory, non-retaliatory reasons which were in no way, pretextual.

## II. <u>SUMMARY OF UNDISPUTED FACTS</u>[1]

Sewon's Korean Finance Department supervisors and management initially approved Jefferson's placement by a staffing company as a temporary Finance Department Clerk in March 2013. (Statement of Undisputed Material Facts "SUMF" at ¶4). After approximately ninety (90) days as a temporary Finance Clerk, these same Korean supervisors and managers promoted Jefferson in June 2013 to an actual Sewon introductory employee in this same Finance Clerk position. (SUMF at ¶ 11). Plaintiff admitted she knew Sewon policy subjected her to higher performance scrutiny during her first ninety (90) days as a Sewon introductory employee and that she would be formally evaluated by her Finance Department supervisors at or near the end of this first ninety (90) days to determine whether she was eligible for continued employment. (SUMF at ¶ 29-30).

---

[1] This Section of the Memorandum is to assist the Court with a summary of the material undisputed facts. In regards to the more detailed undisputed facts, Defendant refers the Court to the actual Statement of Undisputed Material Facts submitted contemporaneously herewith and cited to throughout this Memorandum.

In July 2013, while in her introductory period, Jefferson inquired about a transfer to an open position in Sewon's Information Technology ("IT") Department through the IT Manager at the time, Mr. Gene Chung. (SUMF at ¶ 32). Plaintiff did not discuss her desire to transfer to the IT department with her Finance Department Managers. (SUMF at ¶ 53, 55). Mr. Chung allowed Ms. Jefferson to take a general IT test which she admittedly failed. (SUMF at ¶ 37). On August 23, 2013, Mr. Chung advised Plaintiff she would not be eligible for the IT position at issue because the Company needed someone with five (5) years of IT working experience. (SUMF at ¶ 46). Plaintiff had no IT working experience at the time. (SUMF at ¶ 47). Plaintiff also admitted she was not qualified to transfer from her introductory Finance Clerk job to this IT position at the time because Sewon's Handbook Policy Number 24 states, in relevant part, "a Team Member must be employed at Sewon a minimum of 90 days and have successfully passed the introduction period before being eligible to apply for other positions." (SUMF at ¶ 41-43, 50). While Plaintiff alleged Mr. Chung also told her Sewon wanted a Korean in the IT position at issue and she told Human Resources about this statement, she was admittedly, for the above reasons, otherwise unqualified for the IT position at issue. (SUMF at ¶ 50).

In accordance with Sewon's Handbook Policy 23 pertaining to introductory employees such as Jefferson, her Finance Department supervisors conducted a

formal evaluation of Plaintiff's performance in August 2013, toward the end of her introductory period. (SUMF at ¶ 51-56). Plaintiff's supervisors rated her low in several performance categories for reasons which included Plaintiff's tardiness and refusals to notify her supervisors of same; her attempts to transfer to IT without notifying her Finance Supervisors of such; and her bypassing her supervisors to discuss matters such as her cell phone usage habits with those other than her immediate supervisors. (SUMF at ¶ 53-56). Plaintiff's two Finance Department supervisors - Ms. Kim and Ms. Hong - individually evaluated and scored Plaintiff's introductory employee performance without influencing each other and with no knowledge as to whether their evaluations of Plaintiff would result in her discharge or her retention. (SUMF at ¶ 59). Ms. Kim and Ms. Hong then provided these individual evaluations to Mr. Horton (African American), the General Manager of Human Resources. (SUMF at ¶ 57). Mr. Horton, who did not influence Ms. Kim's or Ms. Hong's evaluations of Plaintiff, applied a pre-determined, previously established threshold score to the averaged evaluation scores for Plaintiff and, as a result, determined that her averaged scores from Ms. Kim and Ms. Hong were not high enough for her to remain employed. (SUMF at ¶ 57-61). As a result, Ms. Jefferson was discharged on August 30, 2013. (SUMF at ¶ 61).

### III.  ARGUMENT AND CITATION OF AUTHORITY
### SUMMARY JUDGMENT STANDARD

Summary judgment is not a disfavored procedural shortcut, *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986), but mandated if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; *see* FED. R. CIV. P. 56(c). Substantive proof burdens apply at this stage as at trial, and an issue is "material" if it is "outcome-determinative." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  When, as here, the nonmovant has the proof burden at trial, the movant need only point out the nonmovant's failure to support each element of each claim with substantial evidence. *Celotex,* 477 U.S. at 323, 325. Rule 56 "applies in job discrimination cases just as in other cases." *Wilson v. B/E Aerospace, Inc.*, 376 F. 3d 1086 (11th Cir. 2004).

"A nonmoving party, opposing a motion for summary judgment supported by affidavits, cannot meet the burden of coming forth with relevant competent evidence by simply relying on legal conclusions or evidence which would be inadmissible at trial." *Avirgan v. Hull,* 932 F.2d 1572, 1577 (11th Cir.1991); *see also* Fed.R.Civ.P. 56(c) (1)(B), (c)(4). The evidence "cannot consist of conclusory allegations or legal conclusions." *Avirgan,* 932 F.2d at 1577. Unsupported self-serving statements by the nonmovant are insufficient to avoid summary judgment. *See Midwestern Waffles, Inc. v. Waffle House, Inc.,* 734 F.2d 705, 714 (11th

Cir.1984).  For a dispute about a material fact to be "genuine," the evidence must be such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## A.    PLAINTIFF'S SPECIAL CLAIMS

Plaintiff's Complaint alleges four (4) "Counts," all of which are based on the same factual assertions: (1) unlawful discrimination based on Plaintiff's race and ethnicity in violation of 42 U.S.C. § 1981; (2) unlawful discrimination based on Plaintiff's race and national origin in violation of Title VII, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981A[2]; (3) compensatory and punitive damages for Plaintiff's Title VII claims under Section 102(a)(1) of the Civil Rights Act of 1991; and (4) retaliation based on Plaintiff's alleged protected activity under 42 U.S.C. § 1981 and Title VII, 42 U.S.C. § 2000e et seq.  (Complaint, pp. 8-12).  Boiled down to its essential points, Plaintiff is an African American who was at one time employed at and then later, by Sewon, who is claiming Sewon and some of its Korean managers discriminated against her because she is African American and retaliated against her for allegedly complaining of discrimination.  The entirety of

---

[2] Claims based solely on national origin are not cognizable under 42 U.S.C. § 1981.  *Benjamin et al. v. American Airlines, Inc.,* 2015 WL 8968297, (S. D. Ga. December 15, 2015); *Saint Francis Coll. v. Al-Khazraji,* 481 U.S. 604, 613 (1987); *Bullard v. OMI Ga., Inc.,* 640 F.2d 632, 634 (5th Cir. 1981); *Bedoya v. Hilti, Inc.,* 159 F. App'x 91, 92 (11th Cir. 2005).

Plaintiff's Complaint is based on allegations that, prior to her discharge from Sewon, she was denied the opportunity to transfer from the Finance Department to the Information Technology ("IT") Department because of her race and national origin, and she was subsequently discharged because of her race, national origin and because she allegedly voiced a complaint of discrimination to Sewon's Human Resources Department. (Complaint, pp. 5-8).

## B. PLAINTIFF'S CLAIMS OF RACE, ETHNICITY AND NATIONAL ORIGIN DISCRIMINATION

Claims of discrimination relying on circumstantial evidence are evaluated using the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Moss v. City of Atlanta Fire Department*, 2015 WL 9451060 (N.D. Ga. 2015); *Maddox-Jones v. Bd. of Regents of Univ. Sys. of Ga.*, 448 F. App'x 17, 19 (11th Cir. 2011) (per curiam). Under the *McDonnell Douglas* framework, a plaintiff establishes a *prima facie* case of disparate treatment by showing (1) she is a member of a protected class; (2) she was qualified for the job; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside the protected class more favorably. *Id.* at 20.

The second step of the *McDonnell Douglas* analysis requires a defendant to rebut a plaintiff's *prima face* case by producing a legitimate, nondiscriminatory reason for the alleged conduct. This burden is "exceedingly light." *Turnes v.*

*AmSouth Bank, NA*, 36 F.3d 1057, 1061 (11th Cir. 1994). Where a prima facie case is rebutted, a plaintiff has the opportunity to show defendant's stated reasons are pretexts for discrimination. *Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2002). A plaintiff must show "such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). Despite this burden-shifting framework, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Wilson*, 376 F.3d at 1088.

Defendant does not contest Plaintiff is African American and therefore, a member of one or more protected classes as in fact, citizens of all races and national origins are. However, as shown below, Plaintiff is unable to prove the second, third and fourth requirements of her prima facie case of race, ethnicity and/or national origin discrimination. Plaintiff's claims of discrimination challenge two (2) of Defendant's employment decisions regarding Plaintiff: (1) Sewon's refusal or failure to transfer Plaintiff from her Finance Department clerk position to an open position in the IT Department; and (2) Sewon's discharge of Plaintiff.

Plaintiff was employed as a temporary Finance Clerk through Weststaff, a staffing company, from March 4, 2013 to sometime in early June 2013. (SUMF at

¶ 2-4). Plaintiff testified she is not claiming discrimination or retaliation as it related to her temporary employment as a Finance Clerk between March 2013 and June 2013. (SUMF at ¶ 14). In fact, she testified she got along well with her supervisors and managers, Ms. Kim, Ms. Hong and Mr. Jung (all of Korean decent) and all "went well" during her initial ninety (90) day temporary assignment. (SUMF at ¶ 15). Plaintiff also testified her immediate supervisor, Ms. Kim, trained her well, was "good at helping " Plaintiff with work issues and helped Plaintiff become more precise and a harder worker during her initial ninety (90) day temporary assignment. (SUMF at ¶ 16).

### 1. Plaintiff's Attempt to Transfer to IT Position

Plaintiff has not and cannot proffer any evidence of discriminatory treatment in relation to Sewon's refusal to allow her to transfer from the Finance to the IT Department in August 2013. In fact, the vast weight of evidence, including Plaintiff's own admissions, shows Plaintiff was not qualified for the IT position she sought in July and August 2013. It is undisputed and admitted by Plaintiff she was an "introductory" Finance Clerk at the time she sought transfer to the IT position at issue. (SUMF at ¶ 32). She also testified she was aware at the time her introductory period would be completed at the end of August 2013 and before such period ended, she would be evaluated by Finance management to determine whether she had performed well enough to be retained as a Finance Clerk. (SUMF

at ¶ 10, 28-29). Furthermore, Policy No. 24 states, "a Team Member must be employed at Sewon a minimum of 90 days and have successfully passed the introduction period before being eligible to apply for other positions." (SUMF at ¶ 41). At the time she sought the IT position, Plaintiff was in her ninety (90) day introductory period. As such, she was admittedly not qualified for the IT position she sought. Plaintiff even testified she understood she was not qualified for the IT position because she was an introductory employee. (SUMF at ¶ 50).

Plaintiff also admittedly lacked the necessary experience for the IT position at issue. Mr. Geewoon (a/k/a "Gene) Chung, the IT manager who discussed this position with Plaintiff, testified Plaintiff "lacked the necessary experience as an IT professional." (SUMF at ¶ 37). Plaintiff herself even testified Mr. Chung told her he needed someone in the IT position with at least five (5) years of IT work experience and that she had no IT work experience at the time. (SUMF at ¶ 46).

Finally, Plaintiff was also unqualified because she flunked the IT test given to her by Mr. Chung on August 23, 2013 to test her general knowledge regarding computers and systems. (SUMF at ¶ 36-37). Plaintiff admitted in her deposition that she flunked this exam. (SUMF at ¶ 37). While Plaintiff testified that in her opinion, the test should not have disqualified her from the IT job because its subject matter did not necessarily encompass the specific responsibilities of the IT job, it is not her opinion as to whether the test should count which is material. It is

the Company's. *Arafat v. Sch. Bd. of Broward Cty.*, 549 F. App'x 872, 874 (11th Cir. 2013). Mr. Chung, who, as manager of the IT Department, administered the test to Plaintiff, testified Plaintiff performed so poorly on the test he had no interest in employing her in the IT Department. (SUMF at ¶ 37).

Assuming *arguendo*, Plaintiff can somehow prove she was qualified, her prima facie case of discrimination is defeated because she cannot prove she "suffered from an adverse employment action" related to this alleged discrimination. Specifically, Plaintiff can proffer no evidence showing the IT position was a more beneficial employment position than the Finance Clerk position she held at the time. Therefore, she is unable to prove the decision not to consider her for the IT position was "adverse." In fact, Plaintiff testified at the time she sought the IT position, she did not know the specific nature of the job's duties and she had no idea what she would be paid if she was offered this position. (SUMF at ¶ 40). Furthermore, although Plaintiff will claim she was "adversely affected" in late August 2013 when she was discharged, she can show no causal connection between the Company's failure to transfer her to the IT position and her discharge from the Finance Clerk position other than her testimony that she "believed" her finance managers were upset because she wanted to leave the Finance Department and tried to do so behind their backs. (SUMF at ¶ 53, 55, 62). Such hardly rises to the necessary level of an unlawful, discriminatory animus.

Finally, assuming *arguendo* Plaintiff could prove she was qualified for the position and suffered an adverse employment action, she nevertheless fails in her burden to prove the fourth (4th) element: that Sewon treated similarly situated applicants for the IT position more favorably. The Eleventh Circuit has held employees "must be similarly situated in all relevant respects." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1204 (11th Cir. 2007)(emphasis and internal quotation marks omitted). "The comparator must be nearly identical to the plaintiff to prevent courts from second-guessing a reasonable decision by the employer." *Wilson*, 376 F.3d at 1088. "The burden of identifying similarly situated individuals is a heavy one." *Hicks v. Jackson Cty. Comm'n*, 374 F. Supp. 2d 1084, 1096 (N.D. Ala. 2005). If a plaintiff fails to show the existence of a similarly-situated employee and there is no other plausible allegation of discrimination, judgment as a matter of law is appropriate. *Arafat,* 549 F. App'x at 874 (citing *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (per curiam)).

Here, Plaintiff is unable to proffer evidence of any other Sewon employee who was seeking the same IT position Plaintiff sought in 2013 and who was at the same time, an introductory employee prohibited by Company policy from transferring because of his/her introductory status. There in fact, were no such introductory applicants who were hired into the IT position. (SUMF at ¶ 65). Furthermore, Plaintiff can proffer no evidence of any individual offered the same

IT position who, like Plaintiff, had absolutely no IT work experience at the time they sought the position. Plaintiff readily admits she had no such experience, despite Mr. Chung's stated requirement that the IT applicant have five (5) or more years of IT working experience. (SUMF at ¶ 37, 46-47). Finally, Plaintiff can point to no other applicant for the same IT position who was, in fact hired, and who failed the written exam provided by Mr. Chung. Plaintiff admits she failed the test and Mr. Chung testifies without contradiction, Plaintiff performed so poorly on the test he had no interest in employing her in the IT Department. (SUMF at ¶ 37, 46-47).

Even if Plaintiff could prove her prima facie case of discrimination, Defendant meets its "exceedingly light" burden of rebutting same by producing multiple legitimate, nondiscriminatory reasons for not offering Plaintiff the IT job at issue. *Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1061 (11th Cir. 1994). The evidence clearly shows Plaintiff was not hired into the IT position because: (1) she lacked the five (5) years IT working experience required; (2) she failed the preliminary test; and (3) as an employee in her ninety (90) day introductory period, she was ineligible for the transfer as per clear and unambiguous Sewon policy.

In order to prove these legitimate, nondiscriminatory reasons are pretextual, Plaintiff must show "such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate reasons for its action that a

reasonable factfinder could find them unworthy of credence." *Combs v. Plantation*

*Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). Not only is Plaintiff unable to

show Defendant's reasons for not transferring her were pretextual under this

standard, she admits the truth of Defendant's reasons. Specifically, Plaintiff

testified: (1) her "introductory employee" status prevented her from being eligible

for the IT position; (2) she had no IT working experience, let alone the five (5)

years' experience required; and (3) she failed the preliminary, written exam

administered by the IT manager. [3]

    Plaintiff testified Mr. Chung stated Mr. Jung - the General Manager - had

said he (Mr. Jung) "wanted a Korean" in the IT position. (SUMF at ¶ 48).

However, for a number of reasons, such fails to create a genuine issue of material

fact for purposes of pretext. First, Plaintiff's allegation in this regard is not

supported by any other evidence. Unsupported self-serving statements by the party

opposing summary judgment are insufficient to avoid summary judgment. *See*

*Midwestern Waffles,* 734 F.2d at 714. As shown above, Plaintiff cannot proffer

evidence to show a similarly situated internal Korean applicant for the same IT

---

[3] While Plaintiff testified she did not believe her failure of this exam should
have blocked her ability to transfer to the IT position because the exam was not
based on job-specific questions, her "opinion" in this regard is incompetent to
trump Mr. Chung's opinion he would not have hired someone who failed the test so
miserably. (SUMF at ¶ 37).

position, who was also in his/her introductory period, who failed the test administered by Mr. Chung, and who had no IT working experience was actually hired for the IT position at issue. In fact, in May, 2014, Mr. Nicholas Garris, an African American male with previous IT experience was hired as a contract employee for the same IT position Plaintiff sought. (SUMF at ¶ 65). Mr. Chung testifies at no time did Mr. Jung tell him "he wanted to fill the position with a Korean." (SUMF at ¶ 48).

Furthermore, Plaintiff's evidence is too vague and obscure to create a "genuine" issue of "material" fact for these purposes. Plaintiff's evidence is limited to her testimony she was told by a manager that another manager "wanted a Korean in the job." (SUMF at ¶ 48). This statement alone could have a number of different meanings, including management had a specific, qualified candidate of Korean descent in mind, had a legitimate need for a Korean-speaking IT employee, or other similar meanings. Such a vague statement cannot create a genuine issue of material fact in regards to Plaintiff's failure to qualify for the IT position.

## 2. Plaintiff's Discharge From Sewon

Plaintiff also claims Sewon discharged her at the end of her introductory period because of her race, ethnicity and/or national origin. Plaintiff again offers no proof of such discrimination, and her own testimony belies these allegations. As to her prima facie case of discriminatory discharge, Defendant concedes for

these purposes only, Plaintiff is African American, she was minimally qualified for her position as introductory Finance Clerk, and her discharge constituted an "adverse employment action."  However, Plaintiff cannot proffer even a scintilla of evidence showing similarly situated employees of a different race, ethnicity and/or national origin were retained under similar circumstances.  As shown above, Plaintiff must proffer evidence of comparators which are nearly identical to Plaintiff in order to prevent courts from second-guessing a reasonable decision by the employer." *Wilson*, 376 F.3d at 1088.  Plaintiff's "burden of identifying similarly situated individuals is a heavy one." *Hicks*, 374 F. Supp. 2d at 1096.

Plaintiff has absolutely no evidence of any other Sewon introductory employee who did not pass the minimum requirements of the introductory evaluation and who was retained, let alone evidence of another Finance Department introductory employee reporting to the same supervisors who was retained under such circumstances.  This is the case because there have been no such situations where the Company has retained an employee who failed to satisfy the minimum introductory period evaluation requirements.  (SUMF at ¶ 58).

Defendant further submits that its "exceedingly light" burden of producing legitimate, nondiscriminatory reasons for its decision to discharge Plaintiff should be even lighter here where Defendant adheres to a clear written policy stating that an introductory employee will be subject to an evaluation as to her "suitability for

the position for which the Team Member was hired based on the quality of work, cooperation and attendance." (SUMF at ¶ 9, 31). Plaintiff herself recognized and understood that as an "introductory employee," she would be evaluated more closely than non-introductory employees and it was up to Sewon's discretion to discharge or retain her at the end of her introductory period. (SUMF at ¶ 31).

Defendant has satisfied this light burden by showing Plaintiff's managers, Ms. Kim ad Ms. Hong, conducted introductory employee performance evaluations towards the end of Plaintiff's introductory period as per the Company's policy. Based on a scale of one (1) to ten (10), Ms. Kim and Ms. Hong rated Plaintiff's performance at five (5) or lower in several performance categories. (SUMF at ¶ 52-56). Furthermore, as a basis for these lower scores, Ms. Hong and Ms. Kim noted Plaintiff spoke to other Team Members about her desire to transfer to the IT Department, and it did not therefore appear Plaintiff was committed to the Finance Department; Plaintiff disregarded policies and procedures; Plaintiff refused to notify Ms. Kim in advance she would be late returning from lunch or beginning work in the morning; Plaintiff bypassed her immediate managers to complain of minor issues such as management's request she silence her cell phone; and Plaintiff consistently refused to address her issues directly with Finance Department management despite being counseled to do so. (SUMF at ¶ 12, 52-56).

Plaintiff must then prove Defendant's legitimate, nondiscriminatory reasons for her discharge were pretext for discrimination. Because a plaintiff bears the burden of establishing a defendant's reasons are a pretext for discrimination or retaliation, a plaintiff "must present 'significantly probative' evidence on the issue to avoid summary judgment." *Young v. General Foods Corp.,* 840 F.2d 825, 829 (11th Cir. 1988) (quoting *Celotex,* 477 U.S. at 322–25).

Plaintiff offers no evidence indicating the Probationary Evaluations resulting in her discharge were pretextual. In fact, the introductory employee policy and the Probation Evaluation procedures leading to her discharge were arguably "pretext-proof." As with all introductory employees and in accordance with established policy, Plaintiff's managers, Ms. Kim and Ms. Hong, completed evaluations towards the end of Plaintiff's introductory period, individually assigning scores to multiple performance categories and totaling the scores. Ms. Kim and Ms. Hong were not aware of the minimum, average score necessary for Plaintiff to retain employment. (SUMF at ¶ 59). Ms. Kim and Ms. Hong simply submitted their evaluations to Mr. Ken Horton, General Manager of the Human Resources Department. (SUMF at ¶ 57, 60). In accordance with previously established procedures, Mr. Horton applied the average scores from Ms. Kim and Ms. Hong and he alone, with the knowledge of the minimum requirements, used the average number to determine Plaintiff's scores did not reach the minimum level to avoid

discharge.  (SUMF at ¶ 61).  Because Mr. Horton never communicated with Ms. Kim or Ms. Hong regarding the results of their evaluations and thus, did not in any way influence their scores, pretext was not possible.  (SUMF at ¶ 60). In short, neither Ms. Kim nor Ms. Hong had any knowledge that their evaluation scores for Plaintiff would result in her discharge and conversely, Mr. Horton (an African American) did not influence the scores which when averaged, ultimately resulted in the discharge of Plaintiff.

## C.    PLAINTIFF'S CLAIM OF UNLAWFUL RETALIATION

Plaintiff's only remaining claim is that she was retaliated against when Sewon allegedly discharged her because she complained of discrimination. Plaintiff's "first step  . . . is to establish a prima facie case of retaliation. This requires evidence of (1) statutorily protected conduct; (2) a materially adverse action; and (3) a causal connection between the protected conduct and the adverse action."  *Taylor v. Cardiovascular Specialists, P.C.*, 4 F. Supp. 3d 1374, 1377-1378 (N.D. Ga. 2014)(citing, *Kidd v. Mando Am. Corp.,* 731 F.3d 1196, 1211 (11th Cir.2013)).  "Establishing a prima facie case creates a rebuttable presumption that the driving force behind the materially adverse action was an intent to retaliate." *Id.* To rebut this presumption, Defendant may then present a legitimate, nonretaliatory reason for the adverse action. *Id.* If it does, Plaintiff must come

forward with proof that the proffered reason is merely pretext. *Id.* (citing, *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1181–82 (11th Cir.2010)).[4]

Plaintiff's discharge on August 30, 2013 is her only plausible "materially adverse action which occurred after her alleged protected activity"[5] However, Plaintiff must prove more than just the bare assertion she voiced a complaint of discrimination and later suffered from a materially adverse employment action. In *Taylor*, this Court described the plaintiff's burden as follows:

> The anti-retaliation provision applies only if Taylor engaged in protected activity, such as opposing a sexually hostile work environment. But employees like Taylor who "seek protection under the opposition clause must have a 'good faith reasonable belief' that her employer was engaged in unlawful discrimination." This means that Taylor must show that she "subjectively believed that [CVS] engaged in unlawful discrimination and that 'h[er] belief was objectively reasonable in light of the facts and record present.'" And while the offensive conduct need not be unlawful discrimination, it

---

[4] The same legal standard applies to retaliation claims under both Title VII and § 1981. *See Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1215 (11th Cir.2008); *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir.2008).

[5] It is uncontroverted that her alleged protected activity - alleged complaint to HR she was told Sewon wanted a Korean in the IT position - came after she was rejected for the IT position on August 23, 2013. (SUMF at ¶ 49). Plaintiff testified she went to see Mr. Horton "after" Mr. Chung told her she would not be offered the IT position and told Mr. Horton that Mr. Chung wanted someone with 5 years of IT experience and Mr. Jung also wanted a Korean in the open IT position. *Id.* As such, Plaintiff cannot logically claim Sewon's refusal to hire her for the IT position was in retaliation for her alleged subsequent complaint to HR. Plaintiff alleges no protected activity prior to her meeting with Mr. Horton when she allegedly advised him management wanted a Korean applicant for the IT position.

"must be close enough to support an objectively reasonable belief that it is." Whether the offensive conduct is "close enough" to an unlawful employment practice is "measured against existing substantive law" at that time.

*Taylor*, 4 F. Supp. 3d at 1378 (internal citations omitted).

Plaintiff is unable to show she held a "good faith reasonable belief" Sewon engaged in unlawful discrimination as it related to the IT position she sought, nor is she able to show any such belief would have been objectively reasonable in light of the facts and existing substantive law. Plaintiff admittedly did not even "complain" of discrimination when she met with Mr. Horton on August 23, 2013. Instead, she testified she merely told Mr. Horton Mr. Chung told her Nate Jung "wanted a Korean in [ the IT] position." (SUMF at ¶ 49). The Eleventh Circuit has held, in order to establish a complaint was a protected activity for purposes of a retaliation claim, an employee must "'at the very least, communicate her belief that discrimination is occurring to the employer,' and cannot rely on the employer to 'infer that discrimination has occurred.'" *Fucron v. Mail Centers Plus*, 2015 WL 5725223, *25 (N.D. Ga. 2015)(citing *Demers v. Adams Homes of Northwest Fla., Inc.,* 321 Fed. Appx. 847, 852 (11th Cir. 2009) (quoting *Webb v. R & B Holding Co., Inc.,* 992 F. Supp. 1382, 1390 (S.D. Fla. 1998))). Plaintiff's alleged statement to Mr. Horton she heard Mr. Jung "wanted a Korean" in the IT position hardly rises

to the level of a "complaint of discrimination" given the fact there could have been many, non-discriminatory reasons for this alleged statement by Mr. Chung.

Furthermore, Plaintiff testified even though Mr. Chung told her Mr. Jung allegedly wanted a Korean in the IT position, she knew she would not have been qualified for the IT position regardless because she did not have any working IT experience and Sewon policy did not allow for introductory employees to transfer to other job openings. (SUMF at ¶ 46-50). Finally, in both her handwritten statement drafted the day after her discharge and her sworn testimony at her unemployment hearing and deposition, Plaintiff stated/testified she believed she was discharged for inquiring into the IT position without telling her Finance Managers. (SUMF at ¶ 62-64). As such, Plaintiff could not have had and by her admissions, did not have, a good faith reasonable belief Sewon discriminated against her by denying her a position because she was not Korean.

For similar reasons, any subjective belief Plaintiff claims she had regarding discrimination in this context would not be "objectively reasonable." *Howard v. Walgreen Co.,* 605 F.3d 1239, 1244 (11th Cir.2010) (quoting *Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir.1997)). The reasonableness of a plaintiff's belief is measured against the law existing at the time of the protected activity. Thus, a plaintiff is charged with knowledge of the parameters of what Title VII does and does not prohibit. *Clover,* 176 F.3d at 1351;

*Little*, 103 F.3d at 960; *Harper v Blockbuster Entertainment Corp.,* 139 F.3d 1385, 1388 n. 2 (11th Cir.1998). As previously discussed, "existing substantive law" pertaining to her race, national origin, or ethnicity discrimination claims would require Plaintiff to prove she was "qualified" for the IT position she sought and the person hired for the open IT position was similarly situated to Plaintiff. Plaintiff's admissions that she was not qualified for the IT position because of her complete lack of IT working experience and the policy prohibiting the transfer of introductory employees shows any belief she may have had that she was rejected because of her race, ethnicity and/or national origin was objectively unreasonable. In light of her own admissions, Plaintiff's evidence of retaliation is simply not "close enough to justify a reasonable belief "as it "could not persuade a reasonable jury." *Taylor*, 4 F. Supp. 3d at 1380.

Even if Plaintiff could prove she engaged in a protected activity, she is unable to prove a causal connection to her discharge. First, to satisfy the causation element, Plaintiff must, at a minimum, present competent evidence that the "protected activity and the subsequent adverse employment action are not totally unrelated." *Fucron* 2015 WL 5725223 at *26. Here, the evidence clearly shows Plaintiff's alleged protected activity - her alleged statement to Mr. Horton she heard Mr. Jung wanted a Korean in the IT position - was wholly unrelated to her discharge. By Plaintiff's admissions, the alleged statement by Mr. Chung was

related to Plaintiff's attempt to transfer to an open IT position, a position for which she readily admits she was unqualified for reasons other than her race, ethnicity or national origin.

Plaintiff's only remotely possible connection between her statement regarding Mr. Jung wanting a Korean in the IT position and her discharge was Mr. Horton's alleged knowledge of the statement and his assignation of predetermined evaluation thresholds to her Probationary Evaluation scores, resulting in her discharge. However, the uncontroverted evidence shows Mr. Horton did not participate in or in any way influence the evaluations which led to Plaintiff's discharge. The evaluations were made by Plaintiff's managers, Ms. Kim and Ms. Hong, and there is absolutely no evidence either was aware of Plaintiff's alleged complaint to Mr. Horton. In fact, Ms. Hong completed and dated her Probation Evaluation on August 20, 2013, three (3) days before Mr. Chung allegedly told Plaintiff of the desire to place a Korean in the IT position and three (3) days before Plaintiff reportedly advised Mr. Horton of this statement. (SUMF at ¶ 49, 52-53, 59-60). Ms. Kim and Ms. Hong did not discuss the results of their evaluations with each other, and neither was aware of the minimum, averaged evaluation score necessary for Plaintiff to remain employed beyond the introductory period. In other words, they had no idea that their evaluations would result in Plaintiff's discharge. (SUMF at ¶ 52-60). Mr. Horton applied a pre-determined minimum threshold

number to the averaged scores of Ms. Hong's and Ms. Kim's evaluations. (SUMF at ¶ 57-58). Thus, even assuming *arguendo* Plaintiff actually complained to Mr. Horton, he provided no input into the evaluations which resulted in Plaintiff's discharge. He instead merely applied a predetermined threshold number. (SUMF at ¶ 57-58). It is therefore, impossible for Plaintiff to prove her alleged protected activity was in any way related to her discharge. "To establish a causal connection, a plaintiff must show that the decision-maker[s] [were] aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 590 (11th Cir.2000). Here, Plaintiff cannot show Ms. Kim or Ms. Hong were aware of the alleged protected activity, nor can she show even if Mr. Horton was aware of some protected activity, he influenced the discharge decision or played any role other than to assign a pre-determined threshold.

While Plaintiff will argue she was discharged within one (1) week of allegedly complaining about IT wanting a Korean in the position, such temporal proximity is itself, insufficient to establish a causal connection. The evidence shows the two are nothing more than a temporal coincidence. To establish causation for purposes of a Title VII retaliation claim, a plaintiff must prove "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 1383(citing *University of Texas*

*Southwestern Medical Center v. Nassar*, 133 S. Ct. 2571, 2533 (2013)). Courts evaluate the causation element of a retaliation claim under "traditional principles of but-for causation." *Taylor*, 4 F. Supp. 3d at 1383. Plaintiff cannot satisfy the applicable "but for" standard which requires her to prove that she would not have been discharged from Sewon in the absence of her alleged statement to Mr. Horton that Mr. Jung wanted a Korean in the IT position.

Plaintiff was aware that Sewon policy required her, as an introductory employee, to be formally evaluated by her managers towards the end of her introductory period and, having started her Sewon employment in June 2013, Plaintiff was properly evaluated at the end of August 2013. Plaintiff began looking into the IT position in July 2013 and did not fail the IT test until August 22, 2013, two (2) days <u>after</u> Ms. Hong completed her evaluation and one (1) day before Plaintiff allegedly complained to Mr. Horton about the allegedly discriminatory statement. (SUMF at ¶ 35, 46-61). As admitted by Plaintiff, her evaluations were pre-established through Sewon policy, she was well-aware she was subjected to higher levels of scrutiny as an introductory employee, she was aware she would be evaluated near the end of her ninety (90) day introductory period, and she exhibited several performance problems prior to the alleged protected activity. As such, by operation of Sewon policy, Plaintiff's discharge was effectively contemplated by Sewon before her alleged protected activity occurred, and the

temporal proximity alone, cannot constitute evidence of a causal link. *Drago v. Jenne,* 453 F.3d 1301, 1308 (11th Cir.2006) ("[W]hen an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation.").

Assuming *arguendo* Plaintiff has satisfied her prima facie case, Defendant has clearly satisfied its exceedingly light burden of production in regards to its legitimate, non-retaliatory reasons for Plaintiff's discharge. Ms. Kim and Ms. Hong rated Plaintiff's performance at a five (5) or lower score, on a scale of one (1) to ten (10) in several performance categories. (SUMF at ¶ 52-60). As support for a portion of their lower scores, Ms. Hong and Ms. Kim noted Plaintiff spoke to other Team members about her desire to transfer to the IT Department and it therefore, did not appear as if Plaintiff was committed to the Finance Department; Plaintiff disregarded policies and procedures; Plaintiff consistently refused to address her issues directly with Finance Department management despite being counseled to do so; Plaintiff refused to notify Ms. Kim in advance she would be late returning from lunch or beginning her work in the morning; and Plaintiff bypassed her immediate managers to complain of such minor matters as management's request that she silence her cell phone. (SUMF at ¶ 52-60). Plaintiff does not even refute Defendant's legitimate, non-retaliatory reasons for

her discharge. She admits she was late returning from lunch and to her desk on multiple occasions, her supervisors were upset with her for going around them and trying to transfer out of the Finance Department, and that this was a likely reason she was discharged.

Because a plaintiff bears the burden of establishing a defendant's reasons are a pretext for discrimination or retaliation, a plaintiff "must present 'significantly probative' evidence on the issue to avoid summary judgment." *Young v. General Foods Corp.,* 840 F.2d 825, 829 (11th Cir.1988) (quoting *Celotex,* 477 U.S. at 322–25). Plaintiff does not even attempt to refute Defendant's legitimate, nonretaliatory reasons for her discharge and is unable to proffer any evidence refuting these non-retaliatory reasons for her discharge. In fact, Plaintiff admits her issues related to tardiness, arriving at her work and coming back late from lunch and that she upset her managers by attempting to gain transfer out of the Finance department without letting them know.

## IV. CONCLUSION

Based on the foregoing, the Court should grant summary judgment to Orkin.

Respectfully submitted this 10th day of March, 2016.

> */s/ Jon M. Gumbel*
> Jon M. Gumbel
> Georgia Bar No. 315195
> *Attorney for Defendants*

**BURR & FORMAN LLP**
171 17th Street NW,
Suite 1100
Atlanta, GA 30363
Telephone: (404) 815-3000, x4248
Facsimile:  (404) 817-3244

## CERTIFICATION OF COUNSEL

I hereby certify that the foregoing **DEFENDANT SEWON'S MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT MOTION** has been prepared in Times New Roman, 14 point font, one of the font and point selections approved by the Court in Local Rule 5.1(C).

/s/ Jon M. Gumbel
Jon M. Gumbel
Georgia Bar No.
jgumbel@burr.com
*Attorney for*

**BURR & FORMAN LLP**
171 Seventeenth Street, N.W.
Suite 1100
Atlanta, Georgia  30363
Telephone: (404) 815-3000
Facsimile: (404) 817-3244

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, overnight, fax or email on this 10th day of March, 2016:

       Amanda A. Farahany
       Barrett & Farahany, LLP
       1100 Peachtree Street NE, Suite 500
       Atlanta, GA 30309

       s/ Jon M. Gumbel
       Jon M. Gumbel
       Georgia State Bar No. 315195
       *OF COUNSEL*

BURR & FORMAN LLP
171 Seventeenth Street NW,
Suite 1100
Atlanta, Georgia 30363